DAN M. LEE, Presiding Justice,
for the Court:
This appeal brings a highly technical, complex factual situation as well as a difficult legal issue before the Court. The factual complexities involve the operation of a carbon dioxide (C02) enhanced oil recovery operation. The resolution of the legal question requires an interpretation of one statute in an intricate framework of taxation, exemption, and partial exemption.
Shell Western E & P, Incorporated (Shell), utilizes a variety of equipment in the capacity of operator of the Little Creek oil field. In essence, the equipment prepares C02 for injection and reinjection into the lower Tuscaloosa formation to facilitate recovery of crude oil. There is also equipment that provides utility services and support systems to the central production facility (CPF). The taxa-bility of most of this equipment for ad valo-rem purposes was a matter of intense disagreement between Shell and the Pike County Board of Supervisors (Board) during the time period from 1986 to 1988. This dispute came before the lower court as a consolidated appeal by Shell from the rulings of the Board that the equipment was subject to taxation.
The lower court ruled that some equipment was taxable at full millage, some equipment was taxable only for school purposes, and that some equipment was totally exempt from ad valorem taxation. Additionally, the lower court ruled that the actual value for 1986 taxation purposes was much lower than the figure assessed by the County. Finally, the court ruled that the Board had no authority in 1988 to assess additional taxes on the equipment for tax years 1986 and 1987.
*70 Shell appeals this ruling and asserts the following assignment of error:
I.THE TRIAL COURT ERRED BY NOT FINDING THAT ALL THE EQUIPMENT AT THE LITTLE CREEK FACILITY WAS TAX EXEMPT AS “PRODUCING OIL EQUIPMENT.”
The Board cross-appeals asserting the following as assignments of error:
I. THE TRIAL COURT ERRED BY NOT FINDING THAT SHELL WAS ESTOPPED TO OBJECT TO THE ASSESSED VALUATION OF ITS PROPERTY ON THE 1986 ROLLS.
II. THE TRIAL COURT ERRED BY FINDING THAT CERTAIN C02 INJECTION EQUIPMENT WAS EXEMPT FROM ALL BUT SCHOOL TAXES.
III. THE TRIAL COURT ERRED BY FINDING THAT CERTAIN C02 RELATED EQUIPMENT WAS TOTALLY EXEMPT FROM AD VALOREM TAXES.
IV. THE TRIAL COURT ERRED IN PARTIALLY EXEMPTING SOME EQUIPMENT BASED ON ALLOCATION OF VALUE BY FUNCTION.
V. THE TRIAL COURT ERRED BY NOT FINDING THAT ALL NON-CONVENTIONAL OIL PRODUCING EQUIPMENT AT LITTLE CREEK WAS SUBJECT TO FULL AD VALOREM TAXATION.
VI. THE TRIAL COURT ERRED BY NOT FINDING THAT SHELL FORFEITED ANY PRE-EXISTING EXEMPTIONS THAT IT WAS ENTITLED TO WHEN IT PARTICIPATED IN THE ENACTMENT OF C02 INCENTIVE LEGISLATION IN 1984.
Finding no error, we affirm.

STATEMENT OF THE LAW

The following is a brief review of the relevant statutory framework for ad valorem taxation. In 1944 the Legislature apparently chose to impose a six per cent severance tax on oil at the production site rather than attempt to tax production equipment. See Miss.Code Ann. § 27-25-503 (1972). Consequently § 27-25-523 (the “1944 exemption”), which established an ad valorem exemption for “all producing oil equipment,” was enacted. Shell asserts that all the equipment involved in this dispute is entitled to exemption as “producing oil equipment.”
Next, in 1946, the Legislature provided a ten year ad valorem exemption, at the discretion of the local board of supervisors, for:
All cycling or recycling, pressure maintenance, natural gasoline and hydrocarbon extraction plants and factories for processing natural gas, condensate, and associated hydrocarbons;
All plants and factories for compressing and returning the residual natural gas to the reservoir, including all conduits, pipelines, pumps, and other property, and equipment and appliances used in connection with the foregoing plants and factories, where such plant or factory is located within the state.
Miss.Code Ann. (1972) § 27-31-101 (superseded since trial). The Board claims that Shell’s equipment is a “recycling plant” rather than “producing oil” equipment. For this reason the Board feels that any exemption must come under this statute. Shell has not made the necessary application for such an exemption and accordingly, the Board asserts that all equipment at Little Creek is fully taxable.
Since the time of the trial, § 27-31-101 has been amended to allow the exemption to broad categories of new enterprises as opposed to the detailed listing of specific enterprises under the above quoted section. Now the exemption applies to “manufacturing, processors, and refineries.” See Miss.Code Ann. § 27-31-101 (1972).
Finally, a package of C02 incentive legislation was enacted in 1984. This legislation:
1. granted eminent domain power to constructors of pipelines built to transport C02 for use in enhanced recovery projects (§ 11-27-47);
*71 2. granted an exemption for “pipelines, dehydrators, compressors, and other appurtenant equipment ... which are used to facilitate the transportation of carbon dioxide (CO2) in connection with an enhanced oil recovery project in the state of Mississippi” from all ad valorem taxes except school taxes (§ 27-31-102);
3. eliminated severance taxes on CO2 used for enhanced oh recovery in the state of Mississippi (§ 27-25-703); and,
4. reduced the severance tax applicable to oil recovered by use of CO2 from six to three per cent (§ 27-25-503).
The lower court found that Shell owned equipment at Little Creek that fell into three separate categories. These categories were “oil producing equipment” which was entitled to the full exemption, “recycling” equipment subject to full taxation, and C02 “transporting” equipment entitled to partial exemption but subject to school taxes.

STATEMENT OF THE FACTS

The history of oil production at Little Creek is not disputed in this appeal. However, both parties place emphasis on the similarities and differences between current and historical operations. Therefore, a brief discussion of the multi-stage development of the oil field is included.
Oil was discovered at Little Creek in 1958 by Shell. During the primary stage of production, oil was recovered through natural energy depletion drive. Development was rapid and competitive. By 1962, the boundaries of the field were fairly well defined and the natural energy driving the oil to the surface was declining. As is typical with depletion drive, recovery was in the area of 25% of the oil in place.
In order to continue production beyond the primary phase, Shell negotiated with other interested parties to “unitize” the Little Creek field. These negotiations were successful and Shell became the operator of the field-wide unit. In March 1962, the second phase of production began with the initiation of a peripheral line drive waterflood. During this stage some former production wells were used to inject water into the reservoir in order to force an oil and water combination to the remaining production wells. The water and oil were then separated with the oil being sold and the water being disposed of through injection into a different geological formation. This method resulted in recovery of roughly another 25% of the oil in place. It continued from 1962 until 1977.
As the recovery through waterflood declined, Shell considered options for a third stage of production. In 1973, a pilot C02 flood was begun in a portion of the Little Creek Unit. The C02 was trucked in from a distributor, prepared, and then injected into the reservoir. When the C02 contacted the remaining oil, a mixture of C02, saltwater, and crude oil was formed. The property of being “mixable” with oil is more properly referred to as miscibility. The mixture formed is much more mobile than the component oil and more readily moves through the formation to the production wells. Once extracted, the mixture is separated into its component parts with the oil being sold, the water disposed of as in secondary recovery, and the C02 reinjected into the producing reservoir after some processing. The pilot resulted in recovery of approximately 125,000 barrels of oil from 1974 to 1977.
Eventually Shell decided to proceed with a full scale CO2 flood at Little Creek. This required re-“unitization” of the field because the original agreement lapsed due to cessation of production. After the new agreement was formed, Shell owned 89% of the interest in the unit and continued to act as operator.
In order to facilitate its plans for a CO2 flood, Shell developed vast carbon dioxide production capacity in Rankin County. After the enactment of the 1984 incentive legislation discussed above, Choctaw Pipeline Company, a Shell subsidiary, built a pipeline for transporting the CO2 to Pike County, among other destinations. Once on the Little Creek site, the CO2 passes through a meter owned by the pipeline company and comes into Shell’s possession. The gas is then filtered to remove particles picked up in transit, passed through a dehydrator to remove water, heated, compressed, cooled and sent from the CPF to the well sites through pipes.
*72 The fluid extracted is separated into components with the CO2 again being filtered, heated, pressurized, cooled, and reinjected. Re-use of CO2 cuts purchase needs from 28,000 standard cubic feet per barrel of oil produced to 8,000 cubic feet. This tertiary stage of recovery was started in 1985 and continued at least until the parties filed briefs on this appeal.

Tax History

In 1986 and 1987, the Board ruled that Shell’s CO2 equipment was for “transportation” of the gas and subject to school taxes under § 27-31-102. Several members of the Legislature were consulted and concurred in this ruling. In 1988, the Board decided that the CO2 equipment was actually a “recycling plant,” under § 27-31-101, operating without an exemption and ordered collection of taxes at the full millage for 1986-1988. Shell appealed all the Board’s rulings while steadfastly maintaining that all equipment was totally exempt as “producing oil equipment” under § 27-25-523. The case came before the lower court as a consolidation of Shell’s appeals. As discussed earlier, the Circuit Court performed a herculean task in reaching a detailed finding breaking the equipment down into producing/exempt, transporting/partially exempt, and recycling/fully taxable classifications. A copy of the final judgment summarizing the lower court’s findings is attached as Appendix A. The trial court also ruled that the Board could not levy additional taxes in 1988 for the earlier years and reduced the assessed value of the equipment on the 1986 tax rolls.
I. WHETHER THE TRIAL COURT ERRED BY NOT FINDING THAT ALL THE EQUIPMENT AT THE LITTLE CREEK FACILITY WAS TAX EXEMPT AS “PRODUCING OIL EQUIPMENT.”
The central issue on appeal is whether the facilities at Little Creek are “producing oil equipment” so as to qualify for the 1944 exemption. These facilities consist of equipment: (i) to prepare the CO2 for injection and reinjection, (ii) to separate the produced fluid, into oil, saltwater, and C02, (iii) to store and prepare the oil for market, (iv) to store and dispose of the water produced in association with the oil, (v) to provide utilities and support systems, and (vi) site improvements. A second issue is whether, and to what extent, the 1946 and 1984 legislation set out above in the Statement of the Law affect the 1944 exemption.

Producing Oil Equipment

The lower court held that some, but not all, of the equipment qualifies for the producing equipment exemption. The test applied below was whether the equipment is “absolutely necessary to the production of oil for that particular well or that particular field.” Specifically, the court found:
that you can produce oil through a CO2 injection system, without many of the facilities [located at Little Creek]. The production may not be as ecomonical [sic], or possibly as efficient, but the Tinsley Field CO2 project, for instance, does not have most of these facilities.
Shell argues that the lower court’s “absolutely necessary” test is improper based on this Court’s holding in Gulf Ref'g Co. v. Board of Supervisors of Jasper County, 220 Miss. 225, 70 So.2d 517 (1954). This case preceded the CO2 incentive legislation enacted in 1984. As discussed below, the incentive package also fixed the taxation status of all equipment involved in the transportation of CO2. We find the lower court’s test is proper under the current statutory scheme.
After careful review of the record and the ruling, we find no fault with the lower court’s application of the test to the equipment located at the Little Creek facility. Judge Eu-banks properly identified the equipment entitled to the producing exemption.

Transportation Equipment

With regard to transporting equipment, the lower court stated:
This Court determines once an oil and gas producer elects to drop from the six percent (6%) severance tax to the three percent (3%) severance tax under the enhanced recovery through CO2 act, then it must live with all the provisions concerning *73 that act, including the taxation provisions. Section 3 of the Act provides that any pipelines, dehydrators, compressors and other appurtenant equipment which are used to facilitate the transportation of C02 to the “oil well site” are exempt for ten years from taxation, except for school taxes.
(emphasis added).
We agree with the lower court’s interpretation that the 1984 Act, although generally intended to promote C02 enhanced oil recovery, effectively revoked any existing claim to exemption for equipment involved in the affected use, i.e. the transportation of C02.
The lower court found, based on the testimony, that, “C02 is not injected at the Little Creek facility and that facility could be anywhere on the pipeline, even back at the Jackson Dome.” Clearly this refutes Shell’s attempts to characterize the equipment as producing oil equipment. The location of such equipment does not change its classification for taxation purposes. Merely placing equipment necessary for transportation at a producing site does not make it producing equipment. We find no error in the lower court’s interpretation or application of § 27-31-102.

Recycling Equipment

After the lower court identified the production and transportation equipment at Little Creek, a third category remained that was not critical to either of these functions. The purpose of this equipment was to facilitate the reuse of the C02 being pumped into lower Tuscaloosa formation. The testimony showed that reuse was more economical than reinjection into a non-producing formation.
It is not necessary for this Court to determine whether this equipment is entitled to exemption under § 27-31-101 since Shell had not requested an exemption under the statute. Suffice it to say that as neither production or transportation equipment, it was fully taxable. We expressly make no finding as to its status should an exemption be sought under the amended § 27-31-101.

Conclusion

The lower court committed no error in its interpretation of the statutes involved in this ease. Furthermore, it properly applied these statutes when categorizing the different types of equipment at Little Creek. The issues raised on the cross-appeal are rejected as being without merit. Accordingly, the final judgment of the Circuit Court of Pike County is hereby affirmed.

AFFIRMED ON DIRECT AND CROSS APPEALS.

HAWKINS, C.J., PRATHER, P.J., SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
APPENDIX A
IN THE CIRCUIT COURT OF PIKE COUNTY, MISSISSIPPI
Shell Western E & P Inc., Appellant, vs. Board of Supervisors of Pike County, Mississippi, Appellee.
Cause Nos. 4463, 4633, 4668, 4733.

FINAL JUDGMENT

(April 13, 1990)
This cause having this day come on for entry of a Final Judgment establishing Shell Western E & P Inc.’s (“Shell”) final tax liability for ad valorem taxes assessed and levied by the Board of Supervisors of Pike County, Mississippi (“Board”) on Shell’s real and personal property in the Little Creek and Olive Fields in said county for the years 1986, 1987 and 1988, which were appealed by Shell to this Court in the above styled and numbered causes and consolidated for trial by agreement of the parties. After having heard and considered all of the evidence, oral and documentary, presented in a lengthy bench trial, pre-trial and post-trial briefs, together with oral argument of counsel for the parties, this Court rendered its written Opinion and Order on June 16, 1989, a copy of which is attached hereto as Exhibit “A” and incorporated herein by reference.
*74 The Court directed the parties to confer for purposes of calculation of Shell’s final tax liability under the classifications stated in its Opinion and Order. While the parties were able to classify many facilities under the guidelines of the Court’s Opinion and Order, questions did arise regarding the tax classification applicable to a number of components of Shell’s facilities in Pike County. Moreover, the Court’s findings that certain facilities owned by Shell were taxable, necessitated additional findings regarding alternative issues raised in the pleadings.
Upon request of this Court, the parties submitted substantial written memoranda re calculation of the final tax liability of Shell. This Court, having now carefully considered the parties’ memoranda and having heard further arguments of counsel, now finds and adjudicates:
I.

Facilities’ Taxable or Nontaxable Status Under the Court’s June 16, 1989 Opinion and Order

The parties post-trial disputes addressed the following component facilities: (i) the produced water flash tank, (ii) the fresh water injection filters and fresh water injection pump, (iii) a number of the major utilities, (iv) wellsite materials for production wells, injection wells, and inhibitor distribution system, (v) flowlines to the C02 injection wells, (vi) the C02 distribution system, (vii) the utility air distribution system, (viii) the field communications system, and (ix) contract engineering and drafting. The parties also disagreed concerning the tax treatment applicable under the Court’s Opinion and Order to supporting structure and site improvement costs. The Court recognizes that neither of the parties abandoned or waived their respective positions taken at trial or prior to entry of its June 16, 1989 Opinion and Order and that “agreements” reached after such entry were for purposes of facilitation of entry of final judgment pursuant to and under said Opinion and Order.
The Court finds and adjudicates that the produced water flash tank, fresh water injection filters and pump, API separator, C02 bypass heater, field utility air distribution system, wellsite materials, the C02 distribution system, the contract engineering, and field communications system are necessary to the production of oil and are exempt from all ad valorem taxation under Miss.Code Ann. § 27-25-528 (1972). The vapor recovery unit, however, performs a recycling function and is fully taxable. The C02 line from the Little Creek Field Unit meter station to the point of entry into the facilities Shell characterizes as its “central production facility” and the flowlines from the central production facility to the C02 injection wells perform a transportation function; they are part of the process of transporting C02 to the “oil well site” and, therefore, these lines are subject to school taxes only under Miss.Code Ann. § 27-31-102 (Supp.1989).
Several of the major utilities and other facilities owned by Shell involved in this tax dispute are multi-purpose facilities; i.e., they serve multiple facilities, some of which may be part of the production function, others part of the recycling process, and still others part of the transportation process. Such multi-purpose facilities thereby may serve fully exempt, partially exempt, and fully taxable facilities. Shell contends that under the Court’s Opinion and Order of June 16, 1989, the taxable status of these multi-purpose facilities should be taxed on an allocated basis according to their percentage of function in each of the foregoing categories, which the Board objected to such allocations. This Court finds and adjudicates, however, that these multi-purpose facilities should be taxed on an allocated basis according to their function and makes the following allocations:
Forty-five (45) percent of the values of the heating medium heater, heating medium surge tank, and heating medium pumps are subject to school tax, forty-one (41) percent of such values are subject to full tax, and fourteen (14) percent of such values are fully exempt. Forty-four (44) percent of the value of the fuel gas scrubber is subject to full tax, forty-three (43) percent of such value is subject to school tax and thirteen (13) percent of such value is fully exempt. Seventy (70) percent of the values of the domestic water *75 tank and ehlorinator and the facilities instrument air system are fully taxable while the remaining thirty (30) percent of such values are fully exempt. Ninety-five (95) percent of the raw water tank was allocated by Shell under this Court’s Opinion and Order of June 16,1989 as fully taxable and the Court therefore finds this facility is subject to full taxation. The same reasoning which merits allocation of utility values warrants allocation of foundation, supporting structure and site improvement costs. These costs were necessarily incurred for installation of both taxable and exempt facilities. Calculation of the percentage of foundation, supporting structure and site improvement costs based upon the relative investments in taxable and exempt facilities, as contended by Shell, is a reasonable method of allocation determination. Utilizing this approach and disregarding the relatively insignificant portion attributable to school tax only facilities, fifty-seven (57) percent of the value attributable to foundation, supporting structure and site is fully taxable and forty-three (43) percent is exempt from all ad valorem taxation. The taxable portion of such costs should be enrolled as real property and these costs are not to be included within the value of the taxable equipment enrolled as personal property.
The various components comprising the tax status of the facilities in question, which Shell refers to as its “central production unit” and its related facilities are identified on Trial Exhibit B-27, that includes on the last page thereof some properties that Shell does not contest as being fully taxable, including miscellaneous spare parts, office furniture and equipment, communications equipment, automotive equipment, the CPF building, the unit office building or chemical inventory.
The taxable or nontaxable status as determined by the Court of all of such facilities and the Olive Field facilities which are in issue in the 1988 appeal by Shell is set forth in a list attached hereto as Exhibit “B” and incorporated herein by reference. The parties agree that for 1987 and subsequent years the true value of each Little Creek facility component should be calculated in a manner consistent with the Court’s findings by utilizing the costs enumerated on the list in trial exhibit B-27. There also is no dispute regarding the true value of the Olive Field facilities as assessed on the 1988 ad valorem tax rolls. For the reasons hereinafter assigned, the Court finds that the 1987 Little Creek component costs, which formed the basis of the 1986 total true value conditionally stipulated to in the pretrial order, should likewise be used for 1986 and are hereby adopted by the Court.
II.

The Millage Applicable in 1986 and 1987

Original Board actions for 1986 and 1987 and Shell’s corresponding appeals in Cause Numbers 4463 and 4633 concerning these properties addressed school taxes only. In March 1988, however, the Board acting in reliance on Miss.Code Ann. § 27-35-5 (1972), authorized the collection of all ad valorem taxes levied for 1986 and 1987 at full millage. Shell appealed this 1988 Board action in Cause No. 4658.
The Court finds and adjudicates that the Board was not authorized under Miss.Code Ann. § 27-35-5 (1972) to enter its order at the March 1988 term ordering the collection of the full millage levied in the years 1986 and 1987, after the State Tax Commission and Board had finally approved the assessments rolls in each of said years and the recapitulations reflected thereon, which showed Shell’s Little Creek facilities as being subject to school taxes only in said recapitulations.
III.

The 1986 Valuation

The parties conditionally stipulated that the total true value of the subject facilities as of March 1, 1986 is $23,396,739. The “true value” presently on the 1986 assessment roll, however, is $47,198,600. The Board contended that Shell was estopped and precluded by statute from questioning the assessed valuation of its Little Creek facilities by its failure to submit an itemized list of the true value of such facilities. The Court, however, adopts *76 Shell’s contentions and finds and adjudicates, that from the evidence presented at the trial, Shell was not estopped or precluded from challenging in a de novo appeal the true valuation of its property on the 1986 Pike County assessment rolls and that the tax liability for 1986 will be determined by reference to the conditionally stipulated 1986 true value.
IV.

Summary of Shell’s Tax Liability for 1986, 1987 and 1988

The Court finds and adjudicates that Shell’s tax liability to Pike County, Mississippi for the years 1986, 1987 and 1988 is correctly reflected on a thirteen page summary attached hereto as Exhibit “C” and incorporated herein by reference. The Court further finds and adjudicates that Shell is entitled to be refunded by the Board any amounts paid in excess of its tax liability for each of said years.
IT IS, THEREFORE, ORDERED AND ADJUDGED:
1. Shell Western E & P Inc.’s (“Shell”) petition for appeal in Cause Number 4463 is sustained in part and denied in part. The true value of subject properties which should be enrolled on the 1986 personal roll and assessed for school taxes only for the year 1986 is $11,963,019. The true value of subject properties which should be enrolled on the 1986 real roll and assessed for full taxes for the year 1986 is $1,208,226. The amount of tax due on such personal and real properties is $70,801.24. Shell has paid a total of $240,253.72, including $236,811.73 paid under protest, in ad valorem taxes on the subject personal and real properties. Therefore, Pike County has a refund obligation to Shell for 1986 ad valorem taxes of $169,452.48.
2. Shell’s petition for appeal in Cause No. 4633 is sustained in part and denied in part. The true value of subject properties which should be enrolled on the 1987 personal roll and assessed for school taxes only for the year 1987 is $13,993,670. The true value of subject properties which should be enrolled on the 1987 real roll and assessed for full taxes for the year 1987 is $1,443,302. The amount of tax due on such personal and real properties is $115,312.25. Shell has paid a total of $203,212.71 in ad valorem taxes, including $198,930.36 paid under protest, on the subject personal and real properties. Therefore, Pike County has a refund obligation to Shell for 1987 ad valorem taxes of $87,900.46.
3. Shell’s petition for appeal in Cause No. 4658 is sustained. Shell not having tendered the additional taxes referenced in this appeal, Pike County has no refund obligation.
4. Shell’s petition for appeal in Cause No. 4733 is sustained in part and denied in part. The true value of subject properties which should be enrolled on the 1988 personal roll and assessed for school taxes only for the year 1988 is $732,804. The true value of subject properties which should be enrolled on the 1988 personal roll and assessed for full ad valorem taxes is $13,561,753. The true value of subject properties which should be enrolled on the 1988 real roll and assessed for full ad valorem taxes for the year 1988 is $1,443,302. The amount of tax due on such personal and real properties is $199,604.82. Shell has paid a total of $369,457.53 in ad valorem taxes, including $360,458.10 paid under protest on the subject personal and real properties. Therefore, Pike County has a refund obligation to Shell for 1988 ad valo-rem taxes of $169,852.71.
5. The total refund obligation of Pike County for 1986, 1987 and 1988 ad valorem taxes is $427,205.65. Pike County, Mississippi shall pay over this $427,205.65 to Shell within thirty days of entry of this judgment.
6. The parties shall bear their own costs in these proceedings.
7. Shell, and its surety St. Paul Fire and Marine Insurance Company, are hereby released from all liability under the appeal bonds filed in each cause herein, which appeal bonds are cancelled and held for naught.
8. The Clerk of this Court shall certify this Judgment to the Board of Supervisors of Pike County, Mississippi, which shall conform hereto in all respects.
SO ORDERED AND ADJUDGED this the 11th day of April, 1990.
*77 /s/ Michael R. Eubanks CIRCUIT JUDGE